Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, & Johnson, P.C.
2999 Douglas Blvd., Ste. 111
Roseville, CA 95661
916-290-7778 ph
916-282-0771 fax

Attorney for Plaintiff
Christopher Whitehead

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| Christopher Whitehead<br><br>Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc.; TransUnion, LLC; Carrington Mortgage Services, LLC<br><br>Defendant. | CASE NO. 8:25-cv-00606<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act; |

COMES NOW Plaintiff Christopher Whitehead (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. § 1681i(a)(5)(A)).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's mortgage account with Carrington Mortgage Services, LLC (hereinafter "CMS").

3. CMS reported Plaintiff's account as included/discharged in bankruptcy despite Plaintiff not including or discharging the CMS account through his bankruptcy proceeding.

4. To the extent CMS was correctly reporting the mortgage account, Experian is unilaterally blocking, and otherwise not allowing CMS to report correct and accurate information regarding Plaintiff's account.

5. Experian's policy is to automatically mark as "closed" and "included in bankruptcy" mortgage accounts that are not included or otherwise provided for in chapter 13 bankruptcy proceedings.

6. TransUnion is not reporting a complete and accurate payment history regarding the status of the Carrington account.

7. As a result, when viewing Plaintiff's TransUnion credit report, it appears that he is not current with his payments to Carrington.

8. To the extent that the adverse reporting is coming from CMS, CMS has failed to timely and accurately update its reporting, including the payment history, despite receiving timely payments from Plaintiff.

9. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

10. Plaintiff's credit score has been adversely impacted by the reporting; he has been unable to rebuild his credit score and obtain favorable interest rates due to CMS, Experian, and/or TransUnion's inaccurate credit reporting.

11. Third parties have been exposed to the inaccurate and misleading tradelines identified herein.

12. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods

undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

13. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

14. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681.

15. The venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

16. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for accurate credit reporting in an attempt to purposefully undermine Plaintiff's attempt to improve his FICO Score.

17. In the alternative Plaintiff alleges that Experian's actions are the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

**FICO, Inc.**

18. FICO is a leading analytics software company with its principal headquarters located in Montana. FICO has over 130 patents related to their analytics and decision management technology and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

19. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

20. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood of repaying a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

21. FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

22. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

23. There are 28 FICO Scores that are commonly used by lenders.

24. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

25. The three largest CRAs are Experian Information Solutions, Inc.; Equifax Information Services, LLC, and Transunion, LLC.

26. FICO does not control what information is provided in a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

27. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

28. Each of the five factors is weighed differently by FICO.

29. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

30. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.

31. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently they occurred, and how many delinquent accounts exist.

32. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

33. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

34. A consumer's FICO score is negatively impacted when an adverse authorized user account is reported.

**Metro 2**

35. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

36. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

37. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

38. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

39. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:

    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.

    c. The CDIA offers a FCRA Certificate program for DFs.

    d. The CDIA offers a FCRA awareness program for DFs.

    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

40. The CDIA's Metro 2 is accepted by all CRAs.

41. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

42. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

43. The three main credit bureaus helped draft the CRRG.

44. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

45. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

46. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

**e-OSCAR**

47. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax Information Services, LLC; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

48. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

49. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

**Plaintiff's Bankruptcy**

50. Plaintiff filed for Chapter 13 bankruptcy protection on September 29, 2020 in order to reorganize his finances, improve Plaintiff's credit worthiness, and raise his FICO score.

51. Plaintiff completed the terms of his chapter 13 plan and received a discharge of those debts specifically provided for in his chapter 13 plan on November 27, 2023.

52. Plaintiff's bankruptcy proceeding specifically did not provide for his mortgage with CMS and it was not otherwise included in the proceeding.

53. After completion of his bankruptcy Plaintiff ordered a credit report from Experian, Equifax, and TransUnion to ensure property reporting by Plaintiff's creditors.

54. Plaintiff noticed a tradeline from CMS on his post-bankruptcy credit report that contained inaccurate, misleading, and incomplete information regarding Plaintiff's mortgage account.

55. CMS was reporting Plaintiff's account as included and discharged in bankruptcy despite the account not being discharged through Plaintiff's chapter 13 bankruptcy.

56. CMS was also not crediting Plaintiff's timely mortgage payments or otherwise acknowledging that Plaintiff was current with his open account.
57. In response, Plaintiff disputed the inaccurate CMS tradeline via certified mail with Experian, Equifax and TransUnion in February of 2024.
58. Plaintiff's dispute letter specifically put CMS (and the credit reporting agencies) on notice that Plaintiff's chapter 13 plan did not provide for those claims and that the account should not be reported as included/discharged in bankruptcy.
59. Plaintiff is informed and believes that Experian, Equifax, and TransUnion received Plaintiff's dispute letter, and in response, sent Plaintiff's dispute to CMS via an ACDV through e-OSCAR.
60. In late April of 2024, after the statutory time period had passed for Plaintiff to receive a reinvestigation report from the CRAs, Plaintiff ordered a second credit report from Experian, Equifax, and TransUnion for the sole purpose of ensuring Plaintiff's account with CMS had been properly updated.
61. The CMS account on Plaintiff's Experian and TransUnion reports was not accurately updated as both CRAs continued to reflect that Plaintiff missed mortgage payments and was otherwise not current with his CMS account.

**Inaccuracy – CMS**

62. For nearly four years Experian prevented CMS from reporting accurate and complete information regarding Plaintiff's mortgage.
63. CMS knew that Plaintiff's account was open and current as CMS continued to receive payments from Plaintiff and credit those payments towards his account balance.
64. Experian, however, unilaterally blocked CMS's reporting of the account information and instead marked the CMS account as "closed" and "included/discharged in bankruptcy."

65. Experian's actions were done without consent or approval of CMS and with knowledge that the account was not otherwise included/discharged in bankruptcy.

66. Experian continued to receive accurate information from CMS that the account was open and current but refused to publish that information on Plaintiff's credit profile.

67. Experian's actions were intentional and it allowed information it knew to be inaccurate and materially misleading to appear in Plaintiff's credit report.

68. To the extent that CMS was not reporting timely and accurate payment information, it failed to report to the CRAs that Plaintiff was current with his payments and did not update the payment history portion of its tradeline.

69. As a result, based on CMS's lack of updates, it appears that Plaintiff is not current with his mortgage and missed various payments.

**Damages**

70. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.

71. In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by Experian, TransUnion, and CMS's reporting of the CMS tradeline as that reporting has been disclosed and disseminated to various third-party lenders.

72. Until CMS's reporting has been properly updated Plaintiff continues to appear a severe credit risk.

73. The actions of Experian, TransUnion, and CMS as alleged herein are acts in violation of the Fair Credit Reporting Act.

**FIRST CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants Experian and TransUnion)

**Experian and TransUnion – Failure to Assure Credit Reporting Accuracy**

74. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

75. Experian and TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

76. Had Experian and TransUnion maintained reasonable procedures to assure maximum accuracy both would never have allowed CMS to report the account as described herein.

77. As described, Experian's own policy prevents mortgage furnishers (such as CMS) from reporting accurate account information as Experian overrides any reporting data from those furnishers.

78. As a result, Experian knowingly inserts misleading and false information about mortgage accounts, which otherwise prevents positive credit information from appearing on consumer reports.

79. Further, TransUnion should have known that the CMS tradeline was inaccurate based on the conflicting data fields and information regarding the account status and payment history.

80. Because of Experian and TransUnion's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

81. The violations described herein by Experian and TransUnion were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

82. Experian and TransUnion both intentionally send consumer disputes to employees who do not live within the continental United States.

83. This is done intentionally to hide and or subvert a consumer's ability to confront individuals directly responsible for approving accurate reporting.

84. These employees for Defendants Experian and TransUnion receive little training concerning how to accurately report consumer debt.

85. Instead, Experian instruct its employees to unilaterally update mortgage accounts for consumers in an active chapter 13 bankruptcy regardless of whether the chapter 13 proceeding actually includes or otherwise provides for the mortgage account.

86. Defendant Experian reported the CMS account as closed/included/discharged in bankruptcy despite the account not being included/discharged in bankruptcy.

87. Further, Defendants Experian and TransUnion failed to report a complete and accurate payment history regarding Plaintiff's CMS account.

88. Consequently, Defendants Experian and TransUnion are liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

89. In the alternative, Experian and TransUnion were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

90. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## SECOND CAUSE OF ACTION

(Violation of Fair Credit Reporting Act 15 U.S.C. §§ 1681s-2(b)/1681i(a)(1)) Against Defendants)

**CMS – Failure to Reinvestigate**

91. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

92. 15 U.S.C. §§ 1681s-2(b) and 1681i-(a)1 prohibit furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

93. Defendant CMS violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

94. The CRAs provided notice to CMS that Plaintiff was disputing inaccurate and misleading information regarding Plaintiff's mortgage payment history, but CMS failed to conduct a reasonable investigation of the information as required by the FCRA.

95. Based on Plaintiff's dispute, CMS should have known that its reporting was incomplete as Plaintiff's dispute letters highlighted the problems with the tradeline, and specifically the misleading payment history.

96. The most basic investigation would simply involve reading Plaintiff's dispute letters or reviewing Plaintiff's account payment history.

97. Plaintiff alleges CMS did not review well established industry standards for credit reporting when a consumer makes timely payments on an account.

98. If CMS had reviewed such standards, all would have seen its reporting was not in compliance and in accordance with the CRRG and consequently inaccurate and or incomplete.

99. Moreover, had CMS done any investigation whatsoever it would have uncovered that its reporting failed to provide for Plaintiff's timely mortgage payments.
100. The lack of investigation is unreasonable.
Plaintiff further alleges that CMS has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures

**Experian and TransUnion – Failure to Reinvestigate Disputed Information.**

101. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.
102. After Plaintiff disputed the accounts mentioned above, Experian and TransUnion were both required to conduct a reasonable investigation and to delete any information that was not accurate under 15 U.S.C. § 1681i-(a)1.
103. Experian and TransUnion failed to conduct a reasonable investigation and failed to correct the misleading and/or inaccurate statements on the account within the statutory time frame or at all.
104. Plaintiff alleges that Experian and TransUnion both have its own independent duty to conduct a reasonable investigation 15 U.S.C. § 1681i-(a)1.
105. Experian and TransUnion are not passive entities bound to report whatever information a data furnisher, such as CMS, provides.
106. Plaintiff alleges that Experian and TransUnion are both readily familiar with Metro 2 guidelines and credit reporting industry standards given that both helped draft said guidelines.

107. Experian and TransUnion failed to conduct a reasonable investigation because any basic investigation would have uncovered that Plaintiff was current with his mortgage

108. Experian and TransUnion therefore did not do the most basic investigation regarding Plaintiff's dispute as it would have learned that Plaintiff was current with his account and that he was not behind with any mortgage payments to CMS.

109. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants Experian and TransUnion)

**Experian and TransUnion – Failure to Review and Consider All Relevant Information.**

110. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

111. Experian and TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

112. As a result of Experian and TransUnion's violations of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

113. The violations by Experian and TransUnion were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

114. In the alternative, Experian and TransUnion were both negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

115. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants Experian and TransUnion)

**Experian and TransUnion – Failure to Delete Disputed and Inaccurate Information.**

116. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

117. Experian and TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

118. As a result of Experian and TransUnion's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

119. The violations by Experian and TransUnion were willful, rendering both individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

120. In the alternative, Experian and TransUnion were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

121. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
2. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
3. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;
4. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
5. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o

Dated: March 26, 2025

**Gale, Angelo, & Johnson, P.C.**
*/s/ Joe Angelo*
Joe Angelo
Attorney for Plaintiff